## Pancoast's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

The facts appear from the following extract from the adjudication of

SINKLER, J., auditing judge.— . . . Three questions are to be determined by the auditing judge as to the validity of claims presented against this estate by the executors of the will of the deceased wife, Rebecca E. Pancoast [the life tenant and fiduciary], which aggregate $39,100.

The first of the claims is based upon an advance made by Mrs. Pancoast on August 28, 1906, of $20,000. It appears from the account and from a copy of her letter of July 6, 1906, to the Land Title & Trust Company, which was offered in evidence, that this sum was used to pay off a mortgage secured on premises 1911 Walnut Street, Philadelphia, which was owned by the trust estate. The principal ledger of the Land Title & Trust Company, the agent which managed the trust estate for Mrs. Pancoast, contains the following entry:

"Rebecca E. Pancoast. Loan to estate to pay off mtgs. 1911 Walnut St. $20,000."

The second claim is based upon (*a*) the transfer of $3,100 from the income to the principal and subscription to 61 shares of Lehigh Coal & Navigation Company stock; and (*b*) advance of $16,000 by Mrs. Pan-

coast and subscription to 16 shares of Girard Trust Company stock.

The guardian's report cites Reel's Estate, 272 Pa. 139 (1922), wherein it is held that ordinarily a fiduciary who advances his money to pay debts of the estate stands in no better position than an unsecured creditor. The guardian pleads the statute of limitations as a bar to the recovery of the $20,000 advanced by Mrs. Pancoast's estate, on the ground that the sum was a voluntary advance by her and was not necessary to pay any obligation of the estate or to preserve any asset thereof. Marshall's Estate, 278 Pa. 206 (1923), is also cited. The rule is therein stated that a life tenant who pays a charge on an estate is prima facie a creditor.

In the present case the advance was made by one who was both life tenant and fiduciary. The ledger entry made by the trust company which acted as her agent describes the advance as a loan. There is no evidence that it was ever regarded as a gift. In Bentley's Estate, 196 Pa. 497, it is held that where an executor has advanced his own moneys to pay debts of the estate, and such payment is made in good faith and in relief of the estate, the statute of limitations does not begin to run against him until he has stated an account. Applying this principle of law to the present case, I hold that this estate is indebted to the estate of Rebecca E. Pancoast, deceased, in the sum of $20,000.

Respecting the transfer from income to principal of the sums of $3,100 and $16,000, respectively, the guardian denies the claim of the executors of Mrs. Pancoast's will on the ground that it is barred by the statute of limitations, since the sums were not paid for the purpose of preserving the assets of the estate nor of paying an obligation of the estate. We do not consider that the cases relied upon by the guardian sustain a defense to these claims. While the $20,000 advanced was entered on the ledger as a loan, the item of $3,100 was

entered in the account of principal as a transfer from income, and the item of $16,000 is entered as an addition to principal. Nevertheless, Mrs. Pancoast's estate has a valid claim in respect of these two transactions for, as it is held in Marshall's Estate, supra, no distinction is drawn between the payment by a check upon the life tenant's individual bank account and the giving of an order to transfer income to principal. Accordingly, an award will be made to the estate of Rebecca E. Pancoast, deceased, in the amounts of $20,000, $3,100, and $16,000. . . .

*William H. Lathrop* and *Richard K. Stevens*, for guardian and trustee ad litem, exceptant.

PER CURIAM, November 21, 1941.—The findings and conclusions of the auditing judge are manifestly correct, and for the reasons given by him the exceptions of the guardian and trustee ad litem are dismissed and the adjudication is confirmed absolutely.

The executors of the deceased life tenant ask an award of interest at the legal rate or at the rate earned by the estate on the sums advanced by her. No such request was made to the auditing judge. However, with the approval of the auditing judge, interest on $39,100 from February 11, 1941 [the date of the life tenant's death], at the rate earned by the estate, is awarded to the executors of the deceased life tenant, and the exception filed by them is sustained.